IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORIO ESTEVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TUSCANY WHEELING, L.L.C. | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Gregorio Esteves, by and through his attorneys, hereby brings this complaint against Defendant Tuscany Wheeling, L.L.C. and states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. This is an action for damages and equitable relief to redress the deprivation of rights secured to Gregorio Esteves by virtue of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A and by virtue of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. 1981A.

2. Defendant has unlawfully discriminated and constructively discharged Mr. Esteves based upon his national origin and race.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's discrimination and retaliation claims pursuant to the provisions of 28 U.S.C. § 1331 arising under 42 U.S.C. § 2000(e)-5.

4. Venue is proper in this judicial district because the events and omissions giving rise to Mr. Esteves's claims occurred in this judicial district.

## The Parties

5. Plaintiff, Gregorio Esteves, is a Hispanic/ Latino male whose national origin and race make him a member of a protected class under federal law.

6. Mr. Esteves was employed by Defendant from January 2000 through May 4, 2019.

7. Defendant Tuscany Wheeling, L.L.C. is a limited liability corporation organized under the laws of the state of Illinois.

8. Defendant Tuscany Wheeling, L.L.C. was Plaintiff's "employer" as that term is defined by the Civil Rights Act, 42 U.S.C. § 2000(e).

## Factual Background

9. Defendant operates a restaurant located at 550 South Milwaukee Avenue in Wheeling, Illinois.

10. Plaintiff was employed by Tuscany Wheeling, L.L.C. ("Tuscany") from January 2000 through May 4, 2019.

11. Plaintiff was initially hired as a buser and was promoted to a server in 2006 based on his strong performance.

12. Plaintiff exceeded Tuscany's expectations.

13. In fact, there were customers who would specifically request Plaintiff to serve their tables.

14. Despite his strong work ethic and good rapport with customers, Plaintiff was harassed on a daily basis.

15. Plaintiff was called a "pig Mexican," "a fucking Mexican," "black Mexican," "a nigger," and "a fucking negro."

16. Defendant, through its management team, also discriminated against Plaintiff by requiring him to share his earned tips with other servers. Defendant called this a "force pull."

17. Tuscany explained that the "force pull" was necessary because Plaintiff had too many customers request him as their server and that the other servers needed to be paid.

18. The "force pull" meant Plaintiff worked harder and did not get the benefit of his earned tips.

19. Defendant's agent, Frank DeAngelo, also had a practice of telling customers who requested Plaintiff to be their server that he was busy even if he was not busy and give those customers to non-Hispanic white servers.

20. The "force pull" and giving customers who requested Plaintiff to other servers economically injured Plaintiff.

21. On September 31, 2018, Plaintiff received a text message from Michael Dyb that Frank DeAngelo was "pissed" that Plaintiff had made $600 in tips from working a party at a customer's house. This party was catered by Defendant and the customer chose to give Plaintiff a large tip.

22. Frank DeAngelo never complained when non-Hispanic white servers were paid large tips by customers and did not assign other servers to wait on tables when non-Hispanic white servers were requested.

23. In December of 2017, Michael Dyb started calling Plaintiff the "foreman" and told him that President Donald Trump was going to put him in charge of finding other Mexicans to build the wall along the Southern border. Plaintiff was told this in front of his co-workers.

24. For one larger event in December 2017, management split the staff into teams. This split was long racial and ethnic lines with one team primarily non-Hispanic whites and the other

3

team Hispanic/ Latinos. In front of all of the staff Plaintiff was told he was the head of the Hispanic/ Latino team and that he was going to build "Trump's wall." During that event the Hispanic/ Latino team was tasked with clearing tables of dirty dishes, breakdown, and carrying the trays of food into the seating area. The non-Hispanic white team only served the food to the customers.

25. In April 2018, Plaintiff had meetings with Defendant's management team where he was assured that the racial and ethnic taunts and discrimination would stop. Plaintiff also met with the Company's CEO Steven Hartenstein. He told Plaintiff it would be corrected.

26. The assurances that things would change rang hollow and again the racist comments started again and the force pull was taking more money from Plaintiff.

27. On February 8, 2019, Plaintiff was preparing a salad for his lunch. Michael Dyb walked behind Plaintiff. Once stationed behind Plaintiff Dyb thrust his pelvis into Plaintiff's backside causing Plaintiff to hit the corner of the preparation station. He rolled onto the ground in pain because he had hit the corner of the station with his groin.

28. Plaintiff was on the ground in pain and Dyb laughed at him.

29. Dyb had never physically hurt any non-Hispanic white servers.

30. The racial and ethnic taunts, the physical altercation, the force pull in combination were too much for Plaintiff and he quit May 4, 2019.

31. Plaintiff did not resign his job because of his performance, but because of Defendant's actions.

## COUNT I
**Violation of Title VII for Unlawful Race and/ or National Origin Discrimination**

32. Plaintiff hereby realleges and incorporates paragraphs 1-31 of this Complaint, as

4

if fully set forth herein.

33. Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

34. By its conduct in allowing racial and ethnic slurs, taunts, the physical altercation, and the force pull Defendant discriminated against Mr. Esteves.

35. The conduct of Tuscany toward Plaintiff by its agents and employees was performed intentionally and with malice and/ or was taken with reckless indifference to her federally protected rights.

36. As a proximate result of the foregoing facts, Mr. Esteves has suffered the loss of his job, lost wages, the value of lost benefits, incidental damages, pain and suffering in the form of emotional distress, anxiety, embarrassment, humiliation, and damage to professional which have caused a consequential and permanent adverse impact on his career.

WHEREFORE, Plaintiff respectfully requests the entry of judgment in his favor and against the Defendant Tuscany for unlawful violation of the race and/ or national origin provisions of Title VII, without limitation, as follows:

    A. An order that Defendant discriminated against Plaintiff on the basis of race and/or national origin in violation of Title VII;

    B. Award of back pay, prejudgment interest, and damages for employment benefits that he would have received but for the discriminatory acts and practices of Defendant;

    C. Award of compensatory, consequential, and punitive damages;

    D. Award reasonable attorney fees and costs incurred in this action;

    E. Order Defendant Tuscany to reinstate Plaintiff to a position he would have

    had in the absence of the discrimination; or, in the alternative, award Plaintiff the value of compensation and benefits he will lose in the future as a result of Tuscany's unlawful conduct;

  F. Order Defendant Tuscany to cease and desist from discriminating against Plaintiff on the basis of race and/ or national origin and to cure any adverse personnel entries and/ or references to third parties;

  G. Order Defendant Tuscany to adopt legally sufficient corrective policies and procedures to cure race and/or national origin discrimination;

  H. Award such other relief as this Court deems appropriate and just.

## COUNT II
### Violation of Title VII for Constructive Discharge

37. Plaintiff hereby realleges and incorporates paragraphs 1-36 of this Complaint, as if fully set forth herein.

38. After attempting to internally resolve the issues of discrimination through the discussions with Tuscany's management, Defendant did nothing to remedy the discrimination suffered by Mr. Esteves and allowed it to continue.

39. Tuscany's actions constitute unlawful constructive discharge in violation of Title VII of the Civil Rights Act

40. As a proximate result of the foregoing facts, Mr. Esteves has suffered the loss of his job, lost wages, the value of lost benefits, incidental damages, pain and suffering in the form of emotional distress, anxiety, embarrassment, humiliation, and damage to professional which have caused a consequential and permanent adverse impact on his career.

WHEREFORE, Plaintiff respectfully requests the entry of judgment in his favor and against the Defendant Tuscany for unlawful violation of the race and/ or national origin provisions of Title VII, without limitation, as follows:

  A. An order that Defendant constructively discharged Plaintiff on the basis of race and/or national origin in violation of Title VII;

      B.      Award of back pay, prejudgment interest, and damages for employment benefits that he would have received but for the constructive discharge;

      C.      Award of compensatory, consequential, and punitive damages;

      D.      Award reasonable attorney fees and costs incurred in this action;

      E.      Order Defendant Tuscany to reinstate Plaintiff to a position he would have had in the absence of the constructive discharge; or, in the alternative, award Plaintiff the value of compensation and benefits he will lose in the future as a result of Tuscany's unlawful conduct;

      F.      Award such other relief as this Court deems appropriate and just.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

Dated: September 13, 2021      **GREGORIO ESTEVES**

By: s/ Carlos G. Becerra
    Attorney for Plaintiff

CARLOS G. BECERRA (ARDC #6285722)
Becerra Law Group, LLC
11 E. Adams St., Suite 1401
Chicago, IL 60603
Telephone: (312)957-9005
Facsimile: (888)826-5848
E-mail: cbecerra@law-rb.com